# UNITED STATES DISTRICT COURT

for the

Northern District of Texas

**FILED**

**April 24, 2024**

KAREN MITCHELL
CLERK, U.S. DISTRICT
COURT

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| | ) | |
| Antonio Romualdo Herrera Gonzalez | ) | 3:24-MJ-400-BT |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____March 4, 2024_____ in the county of _____Dallas_____ in the
_____Northern_____ District of _____Texas_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) and (b)(1)(A) | Possession of a controlled substance with intent to distribute said substance being 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine |

This criminal complaint is based on these facts:

See attached Affidavit of Task Force Officer Christopher Hight.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Christopher Hight, DEA, TFO
*Printed name and title*

Agent sworn and signature confirmed via reliable electronic means, pursuant to Fed. R. Crim. P. 4.1.

Date: _____4/24/2024_____

_____
*Judge's signature*

City and state: _____Dallas, Texas_____

REBECCA RUTHERFORD, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT**

I, Christopher A. Hight, Task Force Officer (TFO) with the Drug

Enforcement Administration (DEA), Dallas/Fort Worth, Texas, being duly sworn,

state:

1.        I am an investigative or law enforcement officer of the United States

within the meaning of Title 18, United States Code, Section 2510(7) who is

authorized by law to conduct investigations and make arrests for offenses

enumerated in Title 18, United States Code, Section 2516.

2.        I have been a deputized TFO since March 2005, and am currently

assigned to Strike Force 1.  I have been employed by my parent agency, the Dallas

Police Department (DPD), for approximately 34 years and have been assigned to

the Narcotics Division for approximately the last 27 years.  I am currently certified

as a Master Peace Officer by the Texas Commission on Law Enforcement.  As a

law enforcement officer, I used a variety of methods investigating drug-related

crimes, including, but not limited to, visual surveillance, witness interviews, the

use of search warrants, confidential informants, undercover agents, pen

registers/trap and trace devices, mobile tracking devices, and Title III wire

interceptions.  Based on my training and experience relating to the investigation of

drug traffickers, and based upon interviews I have conducted with defendants,

informants, witnesses, and participants in drug trafficking activity, I am familiar

with the ways that drug traffickers conduct their business.  My familiarity includes

the various means and methods by which drug traffickers import and distribute

drugs, their use of cellular telephones and calling cards to facilitate drug activity, and their use of numerical codes and code words to conduct drug transactions.

3.    This affidavit is made in support of a criminal complaint against **Antonio Romualdo Herrera Gonzalez** (hereinafter, "Romualdo"), for violations of 21 U.S.C. 841(a)(1) and (b)(1)(A) in Dallas, Texas, in the Northern District of Texas.

4.    The information contained in this affidavit is based on my training and experience, and information I obtained from other agents.  This affidavit is limited in scope to information relevant to this purpose and is not an exhaustive account of all information pertaining to the subject(s) or this investigation.

## Probable Cause

5.    In September 2023, Strike Force 1 agents began investigating a transnational drug-trafficking organization responsible for the manufacture, importation, and distribution of kilogram quantities of methamphetamine from Mexico to locations inside the United States, including Dallas.  To date, this investigation has resulted in the seizure of approximately 900 kilograms of methamphetamine and the arrests of several individuals responsible for the methamphetamine's importation, conversion, and distribution. The investigation identified several known and unknown conspirators, including Romualdo. Agents learned from wiretaps of Romualdo's and other conspirators' telephones that Romualdo works for the drug-trafficking organization by converting liquid or powder methamphetamine into crystal methamphetamine.  Agents also identified

2

Romualdo's residence as 618 Cedar Hill Avenue, Dallas, Texas (hereinafter, "the Cedar Hill residence").

6.  On February 20, 2024, U.S. District Judge Sam Lindsay, Northern District of Texas, issued an Order authorizing the interception of wire and electronic communications occurring over a phone used by Romualdo's known and currently unindicted coconspirator (hereinafter, "Known Coconspirator"). Intercepts began on February 21, 2024, and expired on March 21, 2024.

7.  On March 4, 2024, agents intercepted a series of communications between Known Coconspirator[1], Romualdo, and an unidentified coconspirator (hereinafter, "Unknown Coconspirator").

   a.  At about 10:44 a.m., Known Coconspirator called Romualdo and Romualdo asked, "Do you think you can do me the favor of being here, more or less, in about some thirty-five minutes, forty minutes, around here? What happens is that, those little waters are going to arrive…and to make plans to see around there the guy and just change it from the vehicle." Known Coconspirator asked, "Where, the house?" Romualdo answered, "So, not to bring them here…Yes, well, around here, close by, I can give them one from…here where they sell the food, right…or the little store behind here." Known Coconspirator responded, "Oh, there as well. Okay, let me, I will go there." Romualdo said,

---

[1] Although the identity of Known Conspirator is known to agents, Affiant is using the term Known Conspirator in this affidavit in an effort to maintain the integrity of the investigation.

"Yes, because now, they are arriving in some forty minutes, more or less." Known Coconspirator said, "Okay, I'll see you there."

      b.    During the preceding conversation, I believe Romualdo explained that he expected to receive a shipment of liquid methamphetamine [waters] within 40 minutes and needed Known Coconspirator to assist him. I believe Romualdo did not want the courier to come directly to Romualdo's residence. Given Known Coconspirator regularly provided transportation to Romualdo, I do not believe Romualdo had his own transportation and needed Known Coconspirator to help by taking Romualdo to meet the courier at a nearby location and transfer the liquid methamphetamine from the courier's vehicle to Known Coconspirator's vehicle. Known Coconspirator agreed.

      c.    At about 11:37 a.m., Romualdo called Known Coconspirator and Known Coconspirator reported, "I am about ten minutes, more or less." Romualdo said, "They are already there. I'm just waiting for you to pass by and pick me up here, and then we will go over there…but they are already there."

      d.    During the preceding conversation, I believe Known Coconspirator told Romualdo that he would arrive in ten minutes. Romualdo informed Known Coconspirator that the courier arrived and he was only awaiting Known Coconspirator's arrival so they could go get the drugs.

      e.    At about 11:40 a.m., agents established surveillance on Romualdo's residence in anticipation of Known Coconspirator's arrival.

f. At about 11:53 a.m., Known Coconspirator sent Romualdo a text message that read, "I will arrive in 2 minutes." I believe this text informed Romualdo that Known Coconspirator expected to arrive at Romualdo's location at about 11:55 a.m.

g. At about 11:58 p.m., agents observed Known Coconspirator arrive, driving his truck, and stop on the street in front of Romualdo's residence. Upon Known Coconspirator's arrival, Romualdo immediately exited his residence and entered Known Coconspirator's vehicle. The pair departed and agents followed. Known Coconspirator drove a circuitous route in a neighborhood and made U-turns, which I believe he did in an effort to determine whether he was being followed. As a result, agents lost sight of the truck. Subsequent GPS data for Known Coconspirator's telephone revealed the device travelled to the west side of Dallas and eventually traveled back in the direction of Romualdo's residence.

h. At about 12:45 p.m., agents returned to Romualdo's residence and observed Known Coconspirator's empty truck backed into the residence's driveway.

i. At about 1:03 p.m., agents observed Known Coconspirator and Romualdo exit the residence, enter the truck, and depart. Agents followed as the pair traveled toward Garland. Known Coconspirator drove a long, circuitous route through Garland, for no apparent reason, before returning to Dallas and stopping at a restaurant.

j.      At about 12:58 p.m., Known Coconspirator called Unknown Coconspirator and Unknown Coconspirator asked, "Who you with?" Known Coconspirator replied, "Here with the cousin." Unknown Coconspirator asked, "Oh, you there already? Hey, you don't got nobody that would help us?" Known Coconspirator answered, "Yeah, hell yeah. That's what I was telling the cousin." Unknown Coconspirator said, "Hey, you know right there by the 7-11…Sometimes there is some people that post up there…Say if we get like two niggas from there. Tell them if they'll help us move and how much for the day." Known Coconspirator said, "Man, I got some niggas in my hood that are willing to do all that." Unknown Coconspirator said, "For real? Well, come on, tell them come on." Known Coconspirator asked, "Only two, right?" Unknown Coconspirator answered, "Yeah, only two…I'll probably be there…by two-thirty at the latest…"

k.      During the preceding conversation, I believe Known Coconspirator explained that he was with Romualdo and they were discussing that they needed workers to help them. Unknown Coconspirator suggested going to a location where day laborers were known to congregate. Unknown Coconspirator suggested asking day laborers how much they would charge for the day to help them move items. Known Coconspirator explained that he knew of people that would assist them. Unknown Coconspirator told Known Coconspirator to tell those people to come and help. Known Coconspirator asked whether Unknown Coconspirator only wanted two workers and Unknown Coconspirator affirmed.

Unknown Coconspirator said he should be able to meet with Known Coconspirator and Romualdo by no later than 2:30 p.m.

l.      At about 2:30 p.m., agents observed Known Coconspirator and Romualdo depart the restaurant and begin traveling toward Romualdo's residence. While on the way, Known Coconspirator and Romualdo briefly stopped at a parking lot, where several Hispanic males were congregated under a tree. Two of the males, entered the rear seat of Known Coconspirator's truck and they continued toward Romualdo's residence.

m.      At about 3:00 p.m., agents observed Known Coconspirator, Romualdo, and the two day laborers arrive at Romualdo's residence. Already backed into the driveway of Romualdo's residence was an approximately 15-foot long, U-Haul box truck. Over the next approximately half-hour, agents observed the men as they loaded 27 cases of Topo Chico-labeled water bottles from the residence onto the U-Haul truck. After the cases, the men began loading various pieces of furniture onto the U-Haul truck. Suspecting the Topo Chico-labeled water bottles actually contained liquid methamphetamine, agents arranged for a uniformed, Dallas County Sheriff's Office (DCSO) deputy to stop the U-Haul, upon its departure.

n.      Once the U-Haul departed, it was followed by Known Coconspirator, Romualdo, and the two day laborers, who all rode in Known Coconspirator's truck. Agents followed the U-Haul and Known Coconspirator's truck as they travelled east toward the Downtown Dallas area. Agents observed

the U-Haul's driver commit several traffic violations and directed the DCSO deputy to the U-Haul's location.

       o.     At about 3:55 p.m., the deputy stopped the U-Haul in the 3500 block of Packard Street, Dallas. When the deputy stopped the U-Haul, Known Coconspirator pulled up behind the deputy and tried to approach him. The deputy directed Known Coconspirator to remain in his vehicle until additional cover officers arrived. Surveillance agents remained near the traffic stop in the event the deputy needed assistance. Agents also contacted uniformed Dallas Police Department (DPD) officers and requested they respond to the traffic stop to provide cover for the deputy. A drug-detection canine handler was called to the location, and his canine conducted a free-air sniff of the U-Haul's exterior. The canine positively alerted to the odor of a controlled substance emanating from the cargo area of the U-Haul. A probable cause search was conducted and agents located 324, 600-milliliter, Topo Chico-labeled bottles (194 liters), each containing liquid methamphetamine. Agents conducted a presumptive field test on the suspected liquid methamphetamine and the test revealed positive results for the presence of methamphetamine. All of the U-Haul's and Known Coconspirator's truck's occupants were identified and released. Although I believe Unknown Coconspirator was likely one of the U-Haul's occupants, we were not able to confirm that.

       p.     At about 6:46 p.m., Unknown Coconspirator called Known Coconspirator and asked, "Hey, Known Coconspirator, did you already leave

them?" Known Coconspirator answered, "Yeah, I already did." Unknown Coconspirator asked, "Are you going to the house to help us?" Known Coconspirator affirmed, "Yeah." Unknown Coconspirator asked, "Do you know where Grenas lives...in Mesquite, by La Prada…?" Known Coconspirator affirmed, "Yes." Unknown Coconspirator said, "Well, go over there and you're going to see me there…That's where you'll see the truck, dude."

q.     During the preceding conversation, I believe Unknown Coconspirator asked whether Known Coconspirator dropped off the day laborers. Known Coconspirator said that he did. Unknown Coconspirator asked whether Known Coconspirator was going to meet Unknown Coconspirator and other unnamed people at a house in Mesquite to assist them, and Known Coconspirator said he would. Unknown Coconspirator said he would be present and Known Coconspirator would observe the U-Haul at the house. I believe Unknown Coconspirator, Known Coconspirator, Romualdo, and possibly others were going to meet in person to discuss the seizure of the liquid methamphetamine.

8.     Based on the contents of this affidavit, I believe there is probable cause that **Antonio Romualdo Herrera Gonzalez** knowingly and intentionally committed violations of 21 U.S.C. § 841(a)(1) and (b)(1)(A) in Dallas, Northern District of Texas.

[SIGNATURE PAGE FOLLOWS]

Christopher A. Hight
Task Force Officer, DEA

Subscribed and sworn to before me this  24th  day of April, 2024.

Affiant's signature confirmed via reliable electronic means on this same date

pursuant to Fed. R. Crim. P. 4.1.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

10